## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **MICHAEL MOTYLINSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:13-cv-0127** |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **GLACIAL ENERGY (VI), LLC and MARILYN** | ) | |
| **LOBEL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ATTORNEYS:**

**Ryan C. Meade**
Quintairos, Prieto, Wood & Boyer, P.A.
Miami, Fl.
   *For Plaintiff Michael Motylinski,*

**Charles E. Engleman**
**Sofia L. Mitchell**
Ogletree, Deakins, Nash, Smoak, & Stewart, LLC
St. Thomas, U.S.V.I.
   *For Defendants Glacial Energy (VI), LLC and Marilyn Lobel.*

### <u>MEMORANDUM OPINION</u>

**MOLLOY, C.J.**

   **THIS MATTER** is before the Court on Defendants Glacial Energy (V.I.), LLC ("Glacial") and Marilyn Lobel's ("Lobel") Motion for Summary Judgment (ECF No. 15), Motion for Partial Summary Judgment (ECF No. 28), and Amended Motion for Summary Judgment (ECF No. 34). Plaintiff Michael Motylinski ("Motylinski") collectively opposed Glacial and Lobel's motions first at ECF No. 33, arguing that he had neither been served nor had sufficient

opportunity to conduct discovery, then again at ECF No. 85, conceding service but addressing the merits and maintaining he has had no opportunity to conduct discovery.

## I. FACTUAL AND PROCEDURAL BACKGROUD

Because the Court assumes that the parties are intimately familiar with the underlying facts of this case, the Court will recite only those facts necessary for a disposition of the instant motions. The Court finds the following facts undisputed for purposes of addressing the summary judgment motions.[1]

In May 2011, Motylinski was hired by Glacial as a staff attorney in Glacial's legal department at an annual salary of $118,000.00. At his time of hiring, Motylinski represented to Glacial that he held a *juris doctor* degree, was licensed to practice law in the state of Ohio, and that he had previously worked as an Assistant Attorney General for the Government of the Virgin Islands. In October 2012, Motylinski accepted a reassignment from his position as a staff attorney to Director of International Tax in Glacial's finance department. His new position required learned knowledge relating to the fields of accounting, finance, and taxation, as well as legal and regulatory issues relating to these fields.

In May 2013, Motylinski requested six weeks of leave in connection with the birth of his child, pursuant to the Family and Medical Leave Act (hereinafter "FMLA"). Glacial approved Motylinski's request, and Motylinski began his FMLA leave in June 2013. While on leave, Motylinski requested an additional six weeks of FMLA leave, which Glacial granted, totaling twelve weeks of FMLA leave. Motylinski returned to work on August 26, 2013.

---

[1] Unless otherwise noted, the following facts are asserted by Glacial and Lobel at ECF No. 19 and admitted by Motylinski at ECF No. 85. Glacial supports each assertion by evidence, as laid out in their statement of undisputed facts. *See* ECF No. 19.

Approximately one week later, Glacial terminated Motylinski's employment on September 4, 2013.

According to the Supreme Court of the Virgin Islands, Motylinski testified in his October 5, 2013 hearing before the Ethics and Grievance Committee "that Glacial Energy terminated him as a result of 'the whole mess with regards to V.I.' and that he was told he 'brought this on [him]self with Ohio.'" *In Matter of Motylinski*, 60 V.I. 621, 632 n. 2 (2014) (quoting the transcript of Motylinski's Ethics and Grievance Committee hearing). These representations were relied on by the Supreme Court of the Virgin Islands in their decision regarding Motylinski's disciplinary proceedings. *See generally Motylinski*, 60 V.I. 632.

On December 26, 2013, Motylinski brought the instant action against Glacial and Lobel. Motylinski alleges three causes of action in his Complaint: Counts I and II allege an illegal retaliatory firing under 29 U.S.C. § 2617 of the FMLA against Glacial and Lobel, respectively, and Count III alleges a violation of the Virgin Islands Wrongful Discharge Act, 24 V.I.C. § 76 against Glacial only. ECF No. 1. Glacial and Lobel moved for summary judgment thereafter. ECF Nos. 15, 28. Motylinski opposed Defendants' motions for summary judgment at ECF No. 33, and Defendants subsequently amended their motion for summary judgment at ECF No. 34.

In the interim, Glacial filed a suggestion of bankruptcy on April 21, 2014. ECF No. 47. On July 27, 2014, the Court entered an order staying the entire matter, including claims against Lobel, based on an indemnification agreement entered into between the defendants. ECF No. 51. Eventually, Glacial's bankruptcy case was dismissed and the instant case was reanimated. ECF No. 57. Motylinski was thereafter ordered to respond to the pending

motions for summary judgment. ECF No. 84. Motylinski filed his response on March 1, 2019

(ECF No. 85), and Lobel replied thereto on March 15, 2019 (ECF Nos. 87-88).

## II. LEGAL STANDARD

A party may move for summary judgment at any time until thirty days after the close

of all discovery, and the Court "shall grant" the same "if the movant shows that there is no

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a – b). The moving party must bear "the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citation omitted). In the alternative, the

movant may discharge its initial burden by "showing – that is, pointing out to the district

court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at

325; *see* Fed. R. Civ. P. 56(c)(1)(B) ("a party asserting that a fact cannot be or is genuinely

disputed must support the assertion by showing . . . that an adverse party cannot produce

admissible evidence to support the fact.").

Once the movant has satisfied its initial obligation, the burden shifts to "the

nonmovant to go beyond the pleadings and by [his] own affidavits, or by the depositions,

answers to interrogatories, and admissions on file, designate specific facts showing that

there *is* a genuine issue for trial." *Daubert v. NRA Group, LLC*, 861 F.3d 382, 391 (3d Cir. 2017)

(quoting *Celotex*, 477 U.S. at 324) (emphasis added) (internal quotation marks omitted).

"Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds

of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party" to demonstrate a genuine dispute of material fact. *Celotex*, 477 U.S. at 324. Actual evidence is required, "[b]are assertions, conclusory allegations, or suspicions will not suffice." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (internal citations omitted).

Ultimately, once the moving party has satisfied its initial burden, the nonmovant must present evidence to establish a genuine dispute, rather than merely "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party, but [c]onversely, where a non-moving party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Jutrowski*, 904 F.3d at 289 (internal citations and quotations omitted). In reviewing the evidence presented by both the moving and non-moving parties, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Daubert*, 861 F.3d at 388-89 (citing *Steele v. Cicchi*, 855 F.3d 494, 500 (3d Cir. 2017).

## III. DISCUSSION

### A. Glacial's Bankruptcy

As a preliminary matter, the Court must first address Glacial's status following its bankruptcy petition. On April 10, 2014, Glacial filed a voluntary petition for bankruptcy under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), in the

Bankruptcy Court for the District of Delaware, case number 14-10853-CSS (hereinafter "Gridway"). This petition, along with many others, was consolidated to proceed jointly alongside numerous debtors. The consolidated bankruptcy was commenced the same date and is captioned as *In re Gridway Energy Holdings, Inc., et al.*, Bankr. No. 14-10833-CSS (Bankr. D. Del. 2014) (hereinafter "Gridway Consolidated"). Shortly thereafter, the Bankruptcy Court entered an order authorizing debtors, including Glacial, to sell substantially all of their assets "free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever . . . ." *Gridway Consolidated*, ECF No. 377, at 19.

The Bankruptcy Court further ordered that "all persons or entities, including, but not limited to . . . litigation claimants, and other creditors, holding Liens, claims, encumbrances, and other interests of any kind or nature whatsoever… in any way relating to, The Sellers, [or] the Purchased Assets . . . are forever barred, estopped from asserting against the Buyer… claims based on any taxes or successor or transferee liability." *Id.* This power to order the sale of assets free and clear of competing interests without consent of an interested third party has been recognized for nearly one hundred fifty years. *See, e.g., Ray v. Norseworthy*, 90 U.S. 128, 135 (1875) ("Beyond all doubt the property of a bankrupt may, in a proper case, be sold by order of the bankrupt court free of incumbrance . . . .").

The Bankruptcy Court was noticed of the completed transfer of these assets on March 4, 2015. *Gridway Consolidated*, ECF No. 846. Subsequently, the Bankruptcy Court entered an order on October 16, 2015 under both case numbers authorizing Glacial's dissolution, and stating that "the Debtors shall file a certification … substantially in the form of Exhibit B attached to Motion, and thereupon, the Concluded Debtor Cases, as identified on **EXHIBIT 1**,

shall be dismissed without further order of this Court." *Gridway Consolidated,* 14-10833, ECF No. 1118, at 2 (emphasis in original); *Gridway* 14-10853, ECF No. 5, at 2 (emphasis in original). The referenced Exhibit 1 specifically includes Glacial Energy (VI), LLC among the 'Concluded Debtor Cases.' *Gridway Consolidated,* 14-10833, ECF No. 1118, at 6; *Gridway* 14-10853, ECF No. 5, at 6. On October 29, 2015, the Debtors filed the required certification, triggering the automatic dismissal of Glacial's petition, among other debtors. *Gridway Consolidated,* 14-10833, ECF No. 1134; *Gridway* 14-10853, ECF No. 6.[2]

Importantly, however, while Glacial may have liquidated substantially all of its assets, corporate debtors may not discharge debts and liabilities. 11 U.S.C. § 1141(d)(3) (citing 11 U.S.C. § 727(a) ("The court shall grant the debtor a discharge, unless – (1) the debtor is not an individual.")). The records in this case and *Gridway Consolidated* therefore indicate that Glacial filed a voluntary petition for bankruptcy, that Glacial sold substantially all of its assets, and that Glacial was subsequently dismissed from said bankruptcy. The records do not indicate whether Glacial has, as an entity, been dissolved, despite receiving permission to do so by the Bankruptcy Court. As such, Glacial remains a proper party in this suit. While questions certainly remain as to Glacial's viability as a defendant, those determinations are left to Motylinski's discretion.

---

[2] In its September 29, 2016 Response to this Court's Order Regarding the Bankruptcy Status (ECF No. 55), Glacial wrongly referenced the Bankruptcy Court's June 6, 2016 Order as granting Glacial its relief. However, this reliance was misguided – Glacial VI, LLC had already been dismissed on October 29, 2015. Indeed, the Court declined to take any action regarding Glacial's bankruptcy at that time, indicating that the June 6, 2015 Order made no mention of Glacial (VI), LLC. ECF No. 56.

### B. Counts I & II – Family and Medical Leave Act (FMLA)

Motylinski alleges causes of action in Counts I and II against Glacial and Lobel, respectively. For violation of 29 USC § 2617 of the FMLA. The FMLA "entitles employees to take reasonable leave for medical reasons, but employees must do so in a manner that accommodates the legitimate interests of employees." *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 300 (3d Cir. 2012) (internal quotations and citations omitted) (quoting 28 U.S.C. § 2601(b)(2-3)). In addition to personal medical reasons, the FMLA permits employees to take leave "for the birth or adoption of a child." 29 U.S.C. § 2601(b)(2). When an employee invokes his rights under the FMLA, it is "unlawful for any employer to discharge or in any other manner discriminate against an individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Put another way by a Department of Labor regulation, an employer is prohibited from "retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c).

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) []he invoked [his] right to FMLA-qualifying leave, (2) []he suffered an adverse employment decision, and (3) the adverse action was causally related to h[is] invocation of rights." *Lichtenstein*, 691 F.3d at 302. "Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law." *Id.* This means that claims based on circumstantial

evidence are assessed under a different, burden-shifting framework[3] than claims based on direct evidence.[4] *Id.*

From the outset, Motylinski must establish a prima facie case. He must do this by pointing to evidence in the record sufficient to create a genuine factual dispute about each of the three elements of his retaliation claim: invocation of his FMLA rights, adverse employment action, and causation. *Id.* If the plaintiff can meet his burden to establish a prima facie case, then the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its decision. *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802); *Naber v. Dover Healthcare Associates Inc.*, 473 F. App'x. 157, 160 (3d Cir. Apr. 2, 2012) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). A defendant's burden of rebuttal is "one of production, not persuasion." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). This minimal burden is satisfied by producing evidence sufficient for a reasonable finder of fact to conclude that plaintiff was terminated for a legitimate, nondiscriminatory reason. *Id.*

If the defendant meets this burden, the burden shifts again to the plaintiff to show that the defendant's stated reason is pretextual. *See Lichtenstein*, 691 F.3d at 302; *Naber*, 473 F. App'x. at 160. To establish pretext "at the summary judgment stage, a plaintiff must point

---

[3] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[4] Since the plurality decision of *Price Waterhouse v. Hopkins*, 490 U.S. 167 (1989), the Third Circuit has applied the mixed-motive framework set forth therein for direct-evidence FMLA retaliation claims. *See Lichtenstein*, 691 F.3d at 302. However, the *Price Waterhouse* mixed-motive test has since been superseded by statute, as discussed in *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S. Ct. 1009, 1017 (2020), after previously being disturbed by *Gross v. FBL Financial Svcs., Inc.*, 557 U.S. 167 (2009). In this case, Motylinski does not offer any direct evidence of retaliation. Accordingly, his claims will be assessed through the *McDonnell Douglas* framework, and the Court need not reach the current applicability of *Price Waterhouse*, its potential abrogation, and the resultant state of the law for a direct-evidence FMLA retaliation claim.

to direct or circumstantial evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Jackson v. Planco*, 431 F. App'x. 161, 165 (3d Cir. June 14, 2011) (internal quotations omitted) (quoting *Fuentes*, 32 F.3d at 764). In contrast to the defendant's relativity light burden of production, the plaintiff's burden to prove pretext is "difficult" to satisfy. *See id*.

The record here is clear as to the first two elements of Motylinski's FMLA claims – he did invoke his rights and take FMLA leave following the birth of his child, and he did suffer an adverse employment decision. However, the Court agrees with defendants and finds that Motylinski is judicially estopped from asserting a causal relationship between his FMLA leave and his termination due to his testimony acknowledging that he was terminated for reasons related to his suspension from the Ohio and Virgin Islands bar associations.

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000); *see* 18 Moore's Federal Practice § 134.30, p. 134–62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("Absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."). The doctrine's "purpose is

to protect the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (collecting cases) (internal quotations omitted).

"Because the rule is intended to prevent 'improper use of judicial machinery,' judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *Id.* at 750 (internal citations omitted); s*ee Davis v. District of Columbia*, 925 F.3d 1230, 1256 (D.C. Cir. 2019) ("But the doctrine is not only a defense; because it also protects the integrity of the judicial process, a court may invoke judicial estoppel 'at its discretion.'") (internal citations omitted); *see also Allen v. C & H Distribs., LLC*, 813 F.3d 566, 571 n. 4 (5th Cir. 2015) (explaining that the doctrine may be invoked "'sua sponte' and therefore 'the court is not bound to accept a party's apparent waiver of the doctrine'") (internal citations omitted).

While "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle, . . . several factors typically inform the decision whether to apply the doctrine in a particular case." *New Hampshire*, 532 U.S. at 750 (internal citations omitted). The first factor requires that a party's "later position" be "clearly inconsistent with its earlier position." *Id.* (collecting cases). Further, the contradictory positions need not be made in the same judicial proceeding – inconsistent positions taken before different courts regarding the same subject matter still justify the invocation of judicial estoppel. *See, e.g., Sarauw v. Fawkes*, 66 V.I. 253, 270-71 (2017) (holding that Kevin Rodriguez was judicially estopped from claiming Virgin Islands residency to qualify as a candidate for the Virgin Islands Legislature when he previously represented himself to be a Tennessee resident in a M.D. Tenn. Bankruptcy Court proceeding). Second, courts regularly consider "whether the party has succeeded in

persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *New Hampshire*, 532 U.S. at 750 (internal quotations and citations omitted). A third factor is "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751 (collecting cases).

The Third Circuit has crafted these principles into a three-element test. "First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith – i.e., with the intent to play fast and loose with the court. Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Montrose Med. Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001) (internal citations and quotations omitted).

Importantly, "[s]ummary judgment is appropriate when operation of judicial estoppel renders a litigant unable to state a prima facie case." *Id.* at 779. A district court "need not always conduct an evidentiary hearing" before finding bad faith for judicial estoppel, but a court nevertheless "should ensure that the party to be estopped has been given a meaningful opportunity to provide an explanation for its changed position." *Id.* at 780 n. 5 (internal citations and quotations omitted).

Defendants first raised the argument that Motylinski is judicially estopped from claiming his firing was due to invocation of his FMLA rights in the memorandum

accompanying their initial motion for summary judgment. ECF 18-1, at 11 ("Defendants terminated Motylinski because, shortly after becoming Glacial's CEO, Pocock learned of Motylinski's ethical violations and disciplinary issues in Ohio and the Virgin Islands and decided termination was required."). This assertion is supported by Pocock's affidavit (ECF No. 19-4) and a "true and correct" copy of Motylinski's Notice of Hearing before the Virgin Islands Bar Professional Ethics and Grievance Committee (ECF No. 19-4, Ex. A). In his Opposition filed more than five years later, Motylinski failed to address this argument, instead asserting that he has not had a full opportunity to conduct discovery. ECF No. 85, at 12.

Plaintiff asserts that he "served his First Requests for Admission on Defendant GLACIAL ENERGY [D.E. #32]" on March 5, 2014, but only received Defendant's objection in return. ECF No. 85, at 12. Defendant further asserts he has had "**no** opportunity to obtain written discovery from the parties whatsoever," and "has had no opportunity to conduct non-party discovery to contest or attack the veracity of the Defendant's self-serving affidavit and denials." *Id.* (emphasis in original). Curiously, however, Motylinski never moved to determine the sufficiency of these objections, nor does the record indicate any additional attempts at conducting written discovery in the five years preceding his opposition or the more than two years since.

Ultimately, Motylinski argues that because he has not had the full opportunity to conduct discovery, Rule 56(d) of the Federal Rules of Civil Procedure and derivative caselaw preclude the Court from ruling on Defendants' motion for summary judgment. Motylinski cites *Dowling v. City of Phila.*, 855 F.2d 136, 138-39 (3d Cir. 1988) and *Anderson v. Liberty*

*Lobby*, 477 U.S. 242, 257 (1986) in support.[5] While Motylinski is correct insofar as the

inability to conduct discovery ordinarily limits a district court's ability to grant summary

judgment, this limitation is neither absolute nor boundless. *See Schaffer v. A.O. Smith*

*Harvestore Products*, 74 F.3d 722, 731-32 (6th Cir. 1996) (affirming denial of request of

extension under Rule 56(f) where non-movant claimed obstinance in discovery); *Reyes v.*

*Wilson Mem. Hosp.*, 102 F. Supp. 2d 798, 826 (S.D. Ohio 1998) ("a party may not claim the

right to an extension of time under Rule 56(f) by claiming the opposing party has not

cooperated with discovery requests. The remedy for a party that has not complied with

requests for discovery is a motion to compel or a motion for a finding of contempt."); *see also*

*Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) ("a court may deny a Rule 56(d) motion

---

[5] Similarly, Motylinski argues that Glacial and Lobel's failure to file a responsive pleading constitutes an admission of all allegations contained in the Complaint. ECF No. 85, at 6-9. In support, Motylinski reasons that Third Circuit precedent does not recognize a motion for summary judgment, or a motion under Rule 12, as a responsive pleading. *Id.* (citing *Centifanti v. Nix*, 865 F.2d 1422, 1431 n. 9 (3d Cir. 1989)). However, the question posed is more nuanced. Clearly a motion under Rule 12 does not permanently substitute for an answer, but it is beyond question that such a motion *tolls* the time within which a defendant must file an answer. *See, e.g.,* Fed. R. Civ. P. 12(a)(4)(A) ("Unless the Court sets a different time, serving a motion under this rule alters these periods as follows: if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action . . . .").

Likewise, numerous courts have recognized, motions for summary judgment toll the deadline for a responsive pleading as well. *See, e.g., King v. Christie*, 981 F. Supp. 2d 296, 314 n. 15 (D.N.J. 2013) (reasoning that because a motion under Rule 12 tolls the time for a responsive pleading, and a motion under Rule 12 may be converted to a motion for summary judgment, a motion for summary judgment may toll the deadline for a responsive pleading); *Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1120 (10th Cir. 2006) (finding the same); *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 404 (6th Cir. 1987) ("Courts and commentators have acknowledged that no answer need be filed before a defendant's motion for summary judgment may be entertained."); *see generally First Nat. Bank of Ariz. v. Cities Svc. Co.*, 391 U.S. 253 (1968) (affirming the granting of a pre-answer motion for summary judgment). Moreover, the Court has already denied Motylinski's motion for entry of default where he made the same argument, holding that "both defendants have defended this lawsuit by timely filing a motion for summary judgment with the required accompanying documents." ECF No. 26. While, *arguendo*, if the Court denied Glacial and Lobel's motions for summary judgment, they would be required to file an answer, the Court finds no authority for the proposition that a pre-answer, timely filed motion for summary judgment does not toll the time in which a responsive pleading must be filed, as it does for its Rule 12 counterparts.

*Motylinski v. Glacial Energy, et al.*
Case No. 3:13-cv-0127
Memorandum Opinion
Page 15

where the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment.").

Motylinski's reliance on *Dowling* and *Liberty Lobby* are misplaced. Motylinski represents first that "Rule 56(d) limits a district court's ability to grant summary judgment before discovery is completed to instances where the party opposing summary judgment has had 'an adequate opportunity to obtain discovery.'" ECF No. 85, at 12 (quoting *Dowling*, 855 F.2d at 138-39). However, the *Dowling* Court goes on to find that nothing prevented Dowling "from filing interrogatories or from seeking an extension of the court's May 1, 1987 discovery deadline," positing that "[h]ad Dowling believed that the depositions she sought were essential to her case, she could have somehow brought that fact to the attention of the district court by, for example, filing a motion to compel." *Dowling*, 855 F.2d at 140. The Third Circuit ultimately found: "For some inexplicable reason, Dowling chose not to pursue any of these paths and instead did absolutely nothing to obtain discovery from any of the defendants in the approximately seven months that elapsed between the time Dowling filed her answer to the City's motions and the court granted the City's summary judgment motion." *Id.* Despite Dowling's contention that she had not had a full opportunity to conduct discovery, the *Dowling* Court nevertheless affirmed the district court's grant of summary judgment for the City of Philadelphia. *Id.* at 143.

The weight placed by the Third Circuit on Dowling's failure to file any motion to compel discovery in the referenced seven-month period resonates here, and certainly supports a similar finding in the instant matter where no motion to compel discovery appears in this case's nearly eight-year-old record. Meanwhile, *Liberty Lobby* does not deal

with a Rule 56(d) request at all, and thus does not support the proposition that Motylinski is

entitled to a deferred ruling. Rather, while the contextless, partial-sentence quote relied on

by Motylinski may superficially support his position, the underlying facts and reasoning of

*Liberty Lobby* hold no relevance. *See generally Liberty Lobby*, 477 U.S. 242.

Here, further discovery would not create a genuine issue of fact. *See Pisano*, 743 F.3d

at 931. This is because the Court finds that Motylinski is judicially estopped from claiming

his termination from Glacial was causally related to his FMLA leave. First, Motylinski has

taken positions that are irreconcilably inconsistent. Motylinski had previously testified in his

October 13, 2013 hearing before the Virgin Islands Ethics and Grievances Committee "that

Glacial Energy terminated him as a result of 'the whole mess with regards to V.I.' and that he

was told he 'brought this on [him]self with Ohio.'" *Motylinski*, 60 V.I. at 632 n. 2 (quoting the

transcript of Motylinski's Ethics and Grievance Committee hearing).[6] Despite this sworn

testimony, Motylinski then filed the instant complaint alleging that Glacial fired him because

he could not be reached while taking leave under the FMLA. ECF No. 1, at 5. These two

positions cannot be reconciled.

---

[6] While a court may take judicial notice of a judicial or administrative proceeding which has a "direct relation to the matters at issue," a court can only take judicial notice of the *existence* of those matters of public record (for instance, the existence of a motion or of representations having been made therein) but not of the *veracity* of the arguments and disputed facts contained therein. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (internal citations omitted). Indeed, the Court may take judicial notice of indisputable portions of another court's proceeding. *See, e.g., Gray ex rel. Rudd v. Beverly Enterprises-Miss., Inc.*, 390 F.3d 400, 407 n. 7 (5th Cir. 2004). Here, the Court does not take judicial notice of the Supreme Court of the Virgin Islands' legal opinion, or any weight accorded to their findings of fact, but rather *does* take judicial notice of the existence of Motylinski's admission to the Supreme Court of the Virgin Islands. That is, the Court takes judicial notice of the fact that the Supreme Court of the Virgin Islands ruled against Motylinski, and the fact that Motylinski testified that he was terminated from Glacial as a result of his ethics violations. Importantly, the *veracity* of Motylinski's testimony is not material. What matters here is that his representation was accepted by another court. *See New Hampshire*, 532 U.S. at 750. Thus, the Court takes judicial notice of the fact that Motylinski made this representation under oath at his Virgin Islands Ethics and Grievances Committee hearing, and that it was accepted by both that Committee and the Supreme Court of the Virgin Islands.

On one hand, Motylinski readily admits, as Glacial and Lobel contend in their papers, that Motylinski was terminated as a result of his disciplinary proceedings. Having been hired in May 2011 as a "staff attorney," despite never being admitted to the Virgin Islands Bar in a capacity that would allow such employment, disbarment or suspension would render him unable to perform the required tasks. Although Motylinski was reassigned from his staff attorney position to Director of International Tax in October 2012, he had long since "changed the status of his license to practice law [in Ohio] to inactive on September 1, 2009." *Disciplinary Counsel v. Motylinski*, 983 N.E.2d 1314, 1316 (Ohio 2012).

Importantly, Motylinski's Ohio inactive status as of September 1, 2009, following his July 9, 2009 application for special admission to the Virgin Islands Bar means that, potentially, at no point was he *ever* properly admitted to practice law in the Virgin Islands. *Motylinski*, 60 V.I. at 638 ("Motylinski's failure to amend his special admissions application to notify this Court of his transfer to inactive status in Ohio may have been significant, since this Court may have denied the motion for special admission had this information been disclosed."); *see* V.I. Sup. Ct. R. 202(a), (c) (setting forth the requirement that an applicant must be "admitted to practice in the highest court of a state" to qualify for special admission, and that such admission "shall terminate automatically when the person . . . fails to remain in good standing in each jurisdiction of admission"). This is exacerbated by the fact that Motylinski's application for special admission was not granted by the Virgin Islands Supreme Court until October 19, 2009. *Motylinski*, 60 V.I. at 627. Therefore, Motylinski's qualification to practice law in the Virgin Islands ceased September 1, 2009, roughly seven weeks before

his application was approved. Indeed, the Supreme Court of the Virgin Islands found that,

while:

> Motylinski took the position that an attorney who is in good standing with
> another jurisdiction's bar may qualify for special admission under Supreme
> Court Rule 202, even if the attorney lacks authorization to practice in that
> jurisdiction... the intent of Supreme Court Rule 202 has always been for an
> attorney to remain an active member of the bar of another jurisdiction to
> qualify for special admission, for Rule 202(a) limits special admission only to
> individuals who are admitted *to practice* in the highest court of a state . . . .

> *Id.* at 639 (emphasis in original) (internal quotations and citations omitted).

For Motylinski to later be terminated from a legal position, one that he was never

qualified to work in the first place, and characterize that termination as pretext for a more

nefarious motive strains credulity, and no reasonable finder of fact could find otherwise.

Thus, the Court finds that Motylinski's two positions are irreconcilably inconsistent.

Next, the Court finds that Motylinski changed his position in bad faith – evincing an

intent to play fast and loose with the Court. Important to this analysis is the fact that

Motylinski's prior position was, in fact, adopted by the Virgin Islands Supreme Court. The

United States Supreme Court has instructed courts to consider "whether the party has

succeeded in persuading a court to accept that party's earlier position, so that judicial

acceptance of an inconsistent position in a later proceeding would create the perception that

either the first or the second court was misled." *New Hampshire*, 532 U.S. at 750. (internal

quotations and citations omitted). Had Motylinski's position not been adopted, it would

materially undermine the application of judicial estoppel where the doctrine's "purpose is to

protect the integrity of the judicial process." *Id.* at 749-50. While judicial or administrative

acceptance is not a prerequisite to a finding of bad faith, a court's acceptance of the initial

statement, coupled with a benefit derived therefrom, is evidence of bad faith. *Montrose*, 243

F.3d at 784.

In Motylinski's disciplinary proceeding, the Supreme Court of the Virgin Islands

found:

> "At the October 15, 2013 hearing, Motylinski testified that Glacial Energy
> terminated him as a result of "the whole mess with regards to V.I." and that he
> was told he "brought this on [him]self with Ohio." (H'rg Tr. 131.) However, in
> a complaint filed against Glacial Energy in District Court on December 26,
> 2013, Motylinski alleges that Glacial Energy fired him because he could not be
> reached while taking leave under the federal Family and Medical Leave Act of
> 1993. Complaint at 5, Motylinski v. Glacial Energy VI, LLC, No. 3:13–cv–00127–
> CVG–RM (D.V.I. Dec. 26, 2013)."

*Motylinski*, 60 V.I. at 632 n. 2.

Adopting the existence of Motylinski's representations, as found by the Virgin Islands

Supreme Court, and comparing it to the plain text of Motylinski's complaint, Motylinski has

alleged two discrete reasons for his termination from Glacial. The first position, that he was

terminated from Glacial for his unauthorized practice of law and failure to disclose his Ohio

suspension on his Virgin Islands application for admission *pro hac vice*, most likely served to

demonstrate Motylinski's remorse for his misconduct in his EGC hearing. The second

position, wherein Motylinski alleges in the instant case that he was fired for nefarious

reasons, clearly suits his underlying claims under the Virgin Islands Wrongful Discharge Act

and the FMLA more than the first position could. Motylinski is surely not helped by the fact

that the instant complaint was filed two months after his ECG hearing. The convenience of

these two incompatible positions is the Court's best indication of Motylinski's intent. Thus,

the Court finds that the second element of judicial estoppel is satisfied – that Motylinski

changed his position with the intent to play fast and loose with the courts.

Lastly, the Court finds that no lesser sanction is suitable to address Motylinski's

misconduct. Describing the permissible context for judicial estoppel, the Third Circuit has

held, "a district court may not invoke the doctrine unless: (1) 'no sanction established by the

Federal Rules or a pertinent statute is up to the task of remedying the damage done by a

litigant's malfeasance;' and (2) 'the sanction [of judicial estoppel] is tailored to address the

harm identified.' *Montrose*, 243 F.3d at 784 (quoting *Klein v. Stahl GMBH & Co.*

*Maschinefabrik,* 185 F.3d 98, 108, 110 (3d Cir.1999)). The Third Circuit has clarified,

explaining "that the Rules are not 'up to the task' when they would not provide a district

court with the authority to sanction all of the conduct deserving of sanction." *Klein*, 185 F.3d

at 109.

Here, there is no monetary sanction, nor the striking of any inconsistent pleading, that

would remedy this issue. Except for, perhaps, striking Motylinski's complaint itself, which a

grant of summary judgment effectively accomplishes. There simply is no rule that permits a

plaintiff who is unable to demonstrate facts sufficient to survive summary judgment to

continue prosecuting his cause of action to the defendants' expense. Motylinski has taken

irreconcilably inconsistent positions, and he has done so evincing an intent to play fast and

loose with the courts. In so doing, he has rendered himself judicially estopped from proving

the third necessary element of his FMLA claims – that he suffered an adverse employment

action causally related to the invocation of his rights under the FMLA. To permit Motylinski

to continue prosecuting this inconsistent theory, despite his prior representations, would

undermine the doctrine's purpose "to protect the integrity of the judicial process." *New Hampshire*, 532 U.S. at 749-50.

Accordingly, the Court finds that Motylinski is judicially estopped from asserting that his termination from Glacial was causally related to the invocation of his rights under the FMLA, and not due to the disciplinary action taken against him by the Ohio and Virgin Islands Bars. Being estopped from proving a necessary element of his FMLA retaliation claim, "there is an absence of evidence to support the nonmoving party's case" that cannot be overcome. *Celotex*, 477 U.S. at 323. The Court therefore grants Glacial and Lobel's motion for summary judgment as to Counts I and II.

## C. Count III – Wrongful Discharge Act (WDA)

Motylinski's final cause of action alleges a wrongful termination under the Virgin Islands Wrongful Discharge Act against Glacial. Specifically, Motylinski alleges that he is an "employee" as defined by 24 V.I.C. § 62, that Glacial was an "employer" as defined by 24 V.I.C. §62, and that he was wrongly terminated as defined by 24 V.I.C. § 76(C).

The WDA states, simply, that "[a]ny employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged… ." 24 V.I.C. § 76(c). The referenced subsection (a) provides nine enumerated reasons justifying termination, including such conduct as incompetence, dishonesty, and the use of intoxicants. 24 V.I.C. § 76(a). The WDA as a private cause of action is authorized by 24 V.I.C. § 79, which permits "any wrongfully discharged employee [to] bring an action for compensatory and punitive damages in any court of competent jurisdiction against any employer who has violated the provisions of section 76 of this chapter." 24 V.I.C. § 79. "In

this language, three elements distinguish themselves: (1) an employee has been discharged; (2) by an employer; (3) who violated the provisions of section 76." *Pedro v. Ranger American of the V.I., Inc.*, 70 V.I. 251, 275 (V.I. Super. 2019) (internal quotations omitted).

To meet the first element and qualify for protection under the WDA, the individual must meet the statutory definition of an employee, and the employer must meet the eponymous statutory definition. An "employee" includes any employee or any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment… ." 24 V.I.C. § 62. This section goes on and lists several disqualified categories, relevantly excluding "any individual employed in a bona fide position in an executive or professional capacity" from the definition of an "employee" for purposes of applying Title 24. *Id.*

Determining specifically which occupations fit beneath the umbrella of "professional" is somewhat less clear. "A federal court under *Erie* is bound to follow state law as announced by the highest state court. If the highest court has not spoken on the issue, we can garner assistance from the decisions of the state's intermediate appellate courts in predicting how the state's highest court would rule." *Edwards v. Hovensa*, 497 F.3d 355, 361 (3d Cir. 2007). Such intermediate appellate courts are to be considered "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. A.T.&T.*, 311 U.S. 223, 237 (1940).

However, the Supreme Court of the Virgin Islands has not spoken on whether an "attorney" is an excluded profession under the 24 V.I.C. § 62 definition of "employee," and the Virgin Islands has no intermediate appellate court. So, while this Court may look to the Superior Court of the Virgin Islands as "a datum for ascertaining state law," the Superior Court's holdings do not bind this Court in the same way an intermediate appellate court would. *See Edwards*, 497 F.3d at 361-62. Moreover, at the time of his termination, Motylinski's was no longer employed as a staff attorney for Glacial, but as Director of International Tax – a position that involved the application of legal, accounting, and financial skills.

Courts in the Virgin Islands have previously deferred to the Virgin Islands Code when determining whether an individual is a professional. *Christian v. Reynolds*, 2009 W.L. 10644332, at *2-3 (V.I. Super. October 7, 2009) (holding that the practice of pharmacy is a recognized profession at 27 V.I.C. § 141, and a pharmacist is therefore precluded from asserting wrongful termination under the WDA). Title 27 includes additional professions, such as the practices of medicine, psychology, and accountancy. Notably, the practice of law is not included therein. However, this is not dispositive, as the Supreme Court of the Virgin Islands, not the Virgin Islands Legislature, is vested with the exclusive authority to regulate the practice of law. 4 V.I.C. § 32. Virgin Islands courts have further characterized the practice of law as a "profession," though not in the context of the WDA. *Pate v. Gov't of the V.I.*, 62 V.I. 271, 287 (V.I. Super. 2015) (discussing the issuance of business licenses to engage in the "profession" of a lawyer); *c.f.* V.I. Sup. Ct. R. 211 (codifying the Virgin Islands Rules of Professional Conduct, as promulgated by the Supreme Court of the Virgin Islands).

The Court need not reach this issue, however. Here, the Court has found that Glacial and Lobel are entitled to summary judgment on Counts I and II, which form the sole basis for this Court's original jurisdiction. Among other reasons, "district courts may decline to exercise supplemental jurisdiction over a claim … if the claim raises a novel or complex issue of State law … [or] the district court has dismissed all claims over which it has original jurisdiction… ." 28 U.S.C. § 1367(c). Each of these bases are satisfied here. Not only has the Supreme Court of the Virgin Islands never squarely addressed whether an attorney, or a hybrid attorney-accountant-financial position qualifies as a bona fide professional, but the Court will dismiss the federal claims in this matter with prejudice.

More forcefully, the Third Circuit instructs that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendant state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)) (internal quotation marks omitted) (emphasis in original). Here, the Court finds no such affirmative justification. The interests of judicial economy and convenience are not served by the Court deciding a novel issue of Virgin Islands law in an action where the sole remaining defendant's post-bankruptcy viability is, at best, questionable. Further, any concerns over fairness are alleviated by the fact that, if Motylinski decides he wishes to pursue his WDA claims against Glacial in the Superior Court of the Virgin Islands, then he will find that the statute of limitations over this claim will have tolled during the pendency of the instant suit and for an additional 30 days thereafter. *See* 28 U.S.C.

§ 1367(d). The Court will therefore decline to exercise supplemental jurisdiction over the remaining Wrongful Discharge Act claim.

### IV. CONCLUSION

For the reasons set forth above, the Court finds that this matter is ripe for summary judgment. First, Motylinski is judicially estopped from claiming he was terminated for the invocation of his rights under the FMLA, rather than because of the disciplinary action taken against him by the Ohio and Virgin Islands bars. Motylinski, therefore, is estopped from setting forth a prima facie case, and summary judgment is appropriate on Counts I and II. *See Med. Group*, 243 F.3d at 779. Next, the Court will decline to exercise supplemental jurisdiction over Motylinski's remaining territorial claim under the Wrongful Discharge Act. Accordingly, the Court will grant defendants' motion for summary judgment as to Counts I and II and dismiss those counts with prejudice, and will dismiss Count III without prejudice by separate order.

**DATED:** September 3, 2021                          */s/ Robert A. Molloy*
                                                                                **Robert A. Molloy**
                                                                                **Chief Judge**